UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

HERB REED ENTERPRISES, INC., and  )
HERB REED ENTERPRISES, LLC,         )
                                                           )
          Plaintiffs,                              )
                                                           )     2:11-CV-02010-PMP-RJJ
v.                                                        )
                                                           )     <u>O R D E R</u>
MONROE POWELL'S PLATTERS, LLC; )
MONROE POWELL; and DON GLOUDE, )
                                                           )
          Defendants.                           )
                                                           )
                                                           )

        Presently before this Court is Plaintiff Herb Reed Enterprises, Inc. and Herb Reed Enterprises, LLC's Motion for a Preliminary Injunction (Doc. #4), filed on December 15, 2011. Defendant Monroe Powell's Platters, LLC; Monroe Powell; and Don Gloude (collectively "Powell") filed an Opposition to the Motion for a Preliminary Injunction (Doc. #17) on January 5, 2012. Plaintiffs filed a Reply to Powell's Opposition (Doc. #23) on January 6, 2012. The Court held a hearing on the Motion on January 9, 2012 (Doc. #25).

**I. BACKGROUND**

        The Platters musical group was formed in 1953. (Decl. of Frederick J. Balboni ("Balboni Decl.") (Doc. #6) ¶ 5 & Ex. C; Defs.' Opp'n to Mot. for Prelim. Inj. ("Defs' Opp'n") (Doc. #17) at 3.)[1] The "original" members of the group were David Lynch, Herb Reed ("Reed"),

---

[1] Plaintiffs filed the Balboni Declaration on December 16, 2011. On January 5, 2012, Powell filed an Objection (Doc. #19) to several paragraphs in Balboni's Declaration for lack of personal knowledge. The Court finds it unnecessary to rule on these objections because Powell does not contest the factual allegations themselves. In fact, Powell offers many of the same facts in his Opposition and the facts of this case are well established in prior case law.

1   Paul Robi ("Robi"), Zola Taylor, and Tony Williams.  (Balboni Decl. ¶ 7.)  The group charted
2   several number one hits during the 1950s and 1960s.  (Id. ¶ 8.)  In 1956, Buck Ram, the group's
3   manager, incorporated Five Platters, Inc. ("FPI"), and the original members of the group assigned
4   their rights in "The Platters" mark to FPI in exchange for the issuance of stock in FPI.  (Balboni
5   Decl. ¶¶ 9, 10; Defs.' Opp'n at 3.)  Gradually the original members left the group, and in 1969
6   Reed was the only original member remaining.  (Balboni Decl. ¶ 12.)  In 1969, Reed discontinued
7   his relationship with FPI but continued performing.  (Id. ¶ 13.)  In 1970, FPI hired Monroe Powell
8   ("Powell") to perform with FPI's Platters group.  (Defs.' Opp'n, Decl. of Monroe Powell ("Powell
9   Decl.") ¶ 2.)

10           Thereafter, FPI brought suit against Robi, an original member, for trademark
11  infringement in the California Superior Court, Case No. C43926, claiming exclusive rights to "The
12  Platters" mark based on the 1956 assignments.  In 1974, the court granted judgment in favor of
13  Robi.  Robi v. Five Plattters, Inc., 838 F.2d 318, 320, 324 (9th Cir. 1988) (discussing the 1974
14  California judgment).  The court held that FPI "was a sham used by Mr. Ram to obtain ownership
15  in the name 'Platters,'" and FPI's issuance of stock to the group members was "illegal and void"
16  because it violated California corporate securities law.  Id. at 320 (quoting the 1974 California
17  judgment).  The 1974 California judgment left open the question of who owns the rights to "The
18  Platters," and various parties have been embroiled in litigating this question ever since.

19           Numerous courts have endeavored to determine who, of all the parties claiming rights
20  to the mark, is "The Great Pretender."  See Robi v. Reed, 173 F.3d 736, 737 (9th Cir. 1999).
21  Unfortunately this drawn out legal battle has created "a tangled web of litigation resulting in a
22  number of inconsistent federal and state court decisions."  Five Platters Inc. v. Williams, 4
23  U.S.P.Q.2d 1296, 1297 (N.Y. Sup. Ct. 1987).  While some courts have held that one party has
24  superior rights to the other, this Court has held that "Only You," Herb Reed, have exclusive rights
25  to the mark.  Reed v. Bennett, No. 2:10-CV-01981-JCM-RJJ (D. Nev. May 16, 2011).  The Court
26  will give a brief account of the cases that affect Reed's and Powell's rights to "The Platters."

2

### A. Litigation between FPI and Robi

Years after the 1974 judgment in favor of Robi, FPI sued Robi again for trademark infringement. Robi, 838 F.2d at 323. The district court dismissed FPI's complaint against Robi based on the claim preclusive effect of the 1974 California judgment. Id. In 1988, the Court of Appeals for the Ninth Circuit affirmed. Id. at 324. Specifically, the Ninth Circuit held "[t]he claim preclusive effect of the 1974 California judgment precludes the Corporation from challenging Robi's use of the name THE PLATTERS." Id. The Ninth Circuit remanded, and the district court cancelled FPI's registration of the mark and permanently enjoined FPI from challenging Robi's use of the mark. Robi v. Five Platters, Inc., 918 F.2d 1439, 1441 (9th Cir. 1990). FPI once again appealed, and the Ninth Circuit affirmed. Id. In sum, as between Robi and FPI, Robi has superior rights to the mark.

### B. Litigation between Robi and Reed

Following litigation with FPI, Robi transferred his rights to his wife, Martha Robi. Robi, 173 F.3d at 738. Martha Robi sued Reed claiming exclusive rights to the mark. Id. The district court held that Reed had the right to use the mark to the exclusion of Robi. Id. In 1999, the Ninth Circuit affirmed. Id. The Ninth Circuit held that "members of a group do not retain rights to use the group's name when they leave the group." Id. at 739. Unlike Robi, who joined the Platters in 1954 and left in 1965, Reed was a member of the group since its inception in 1953 and performed continuously with the group since 1953. Id. Therefore, Robi lost his rights to the mark when he left the group, but Reed has retained his rights to the mark. Id. at 740. In sum, as between Robi and Reed, Reed has superior rights to the mark.

### C. Litigation between FPI and Powell

Powell performed for FPI from 1970 to 1995 but continued performing with a group calling themselves The Platters after 1995. (Powell Decl. ¶¶ 3-4.) FPI brought suit against Powell for trademark infringement in the United States District Court for the Central District of California. Five Platters, Inc. v. Powell, 7 F. App'x 794, 794-95 (9th Cir. 2001). The district court granted

summary judgment in Powell's favor. Id. at 795. In 2001, the Ninth Circuit reversed, reasoning that FPI used the mark with intent to mislead by presenting its group as "The Platters," although the group did not include any original members. Id. The Ninth Circuit held that "unless the plaintiffs can present evidence that they used the trademark in a way that was not false and misleading (e.g., by identifying the group as 'The Platters Since 1970'or some similarly distinguishing label), they cannot assert a common law trademark in 'The Platters.'" Id. The Ninth Circuit remanded to the district court to determine if any of FPI's use was not false or misleading. Id.

On remand the district court dismissed for lack of federal jurisdiction, Case No. 98-3712 R (BQRX). (Pls.' Mot. for Prelim. Inj. (Doc. #4), Decl. of Eric M. Sommers ("Sommers Decl."), Ex. D.) Thereafter FPI filed suit against Powell in state court. In 2002, FPI and Powell entered into a stipulation for entry of judgment in the California Superior Court, Case No. BC262188. (Sommers Decl., Ex. B.) Powell agreed not to use "The Platters" name and FPI agreed not to contest Powell's use of the names "Monroe Powell Platters," "The Platters Featuring Monroe Powell," "The Platters Featuring the Legendary Monroe Powell," or "Monroe Powell and the Platters" provided Powell's name was featured prominently in any advertising. (Id.) In short, as between FPI and Powell, no court has determined who has superior rights to the mark. But FPI and Powell agreed that Powell could use certain names, including "The Platters featuring Monroe Powell."

**D. Litigation between FPI and Reed**

*1. Florida Action*

In 1984, FPI sued Reed for trademark infringement in the United States District Court for the Southern District of Florida, Case No. 84-8324-CIV-ARONOVITZ. (Sommers Decl., Ex. C.) In 1987, FPI and Reed entered into a stipulation for settlement ("the 1987 stipulation"). (Id.) Similar to Powell, Reed agreed not to use "The Platters" name and FPI agreed not to contest Reed's use of the names "Herb Reed and The Platters" or "Herb or Herbert Reed of the Original

4

Platters." (Id.) But the stipulation also included the following clause:

> In the event that a court of competent jurisdiction enters a final order with all appeals being exhausted that provides that the Five Platters, Inc. has no right in the name "The Platters," then nothing contained herein shall be construed to limit Herbert Reed's rights in the name "The Platters" and this agreement shall not inure to any party other than The Five Platters, Inc., and its successors and assigns or Herbert Reed.

(Id.) This Order will refer to this provision as the "escape clause."

### 2. New York Action

Years later, FPI sued Reed again for trademark infringement in the United States District Court for the Eastern District of New York (the "New York action"). Marshak v. Reed, No. 96-CV-2292-NGMLO, 2001 WL 92225, at *1 (E.D.N.Y. Feb. 1, 2001). The district court interpreted the 1987 stipulation—specifically Reed's consent to dismissal with prejudice and the escape clause—as barring "Reed from asserting that he has any right to the name 'The Platters' as against FPI or those claiming through FPI except as specifically allowed in the agreement, or from otherwise interfering with [FPI's] rights to the use of 'The Platters.'" Id. at 15. The district court reasoned that a stipulation of dismissal with prejudice dismisses claims, counterclaims, and claims that could have been brought by the parties. Id. at 16. Therefore, the 1987 stipulation dismissed FPI's claims against Reed, Reed's counterclaims against FPI, and Reed's claim to exclusive rights to the mark because Reed could have brought such claim in the Florida action. Id. at 17.

The district court further concluded that "[t]here has been no adjudication that FPI has no right to the name 'The Platters' as required by the escape clause of the stipulation for settlement." Id. at 19. Accordingly, the district court granted FPI's motion for summary judgment and declared "FPI's rights, and the rights of the other plaintiffs derived from FPI" as superior to Reed's rights. Id. at 20. The district court also issued an injunction barring Reed from interfering with FPI's use of the mark and from performing or using "The Platters" mark. Id. at 21. Lastly, the district court granted FPI's motion to cancel Reed's registration of "The Platters" mark. Marshak v. Reed, No. 96-CV-2292-NGMLO, 2001 WL 799571, at *4 (E.D.N.Y. July 11, 2001).

Reed appealed to the Second Circuit. Meanwhile the Ninth Circuit in <u>Five Platters, Inc. v. Powell</u> held that FPI used "The Platters" with intent to mislead the public and remanded to determine if any of FPI's use was not false or misleading. 7 F. App'x at 794-95. The Second Circuit remanded <u>Marshak v. Reed</u> and directed the district court to consider the impact of the Ninth Circuit decision on the district court's grant of FPI's motion for summary judgment and FPI's motion to cancel Reed's registration of the mark. <u>Marshak v. Reed</u>, 34 F. App'x 8, 11 (2d Cir. 2002). The district court adhered to its earlier decisions because the Ninth Circuit's holding did not determine that FPI has no right in the name "The Platters," and thus, the holding did not trigger the escape clause. <u>Marshak v. Reed</u>, 229 F. Supp. 2d 179, 184-85 (E.D.N.Y. 2002). Reed again appealed and the Second Circuit affirmed the district court. <u>Marshak v. Reed</u>, 87 F. App'x 208, 209 (2d Cir. 2004).

*3. Nevada Action*

In 2010, Reed filed suit for trademark infringement against Jean Bennett ("Bennett"), FPI, and Personality Productions, Inc. ("PPI") in this Court, Case No. 2:10-CV-01981-JCM-RJJ (the "Nevada action). Reed filed a Complaint (Doc. #1) in the Nevada action on November 12, 2010. Although Bennett filed an Answer (Doc. #12) on behalf of herself, FPI, and PPI, the Court ordered Bennett to find counsel for FPI and PPI. (Mins. (Doc. #31).) The Court also ordered FPI and PPI to file answers or responses to the Complaint by March 31, 2011. (<u>Id.</u>) On March 30, 2011, Bennett informed the Court that no one would be representing FPI and PPI. (Mins. (Doc. #41).) On April 22, 2011, Reed filed a Motion for Default Judgment (Doc. #51) against FPI and PPI. On May 16, 2011, the Court entered a Default Judgment and Permanent Injunction (Doc. #60) against FPI and PPI declaring: (1) FPI and PPI "never used the mark 'The Platters' in a manner that [was] not false and misleading and thus never acquired common law rights to the mark"; and (2) "Reed, having first used the mark 'The Platters' in commerce in 1953, and having continuously used the mark in commerce since then has superior rights to the mark to all others," including FPI, PPI, and "anyone claiming rights from or through them." In other words, the

default judgment declared that Reed has exclusive rights to the mark. In sum, as between Reed and FPI, the Eastern District of New York held that FPI has superior rights to the mark, but this Court recently entered a default judgment declaring that Reed has exclusive rights to the mark. Reed now brings suit against Powell for trademark infringement, unfair competition, and trademark dilution. Reed seeks a preliminary injunction enjoining Powell from using "The Platters" mark.

**II. PRELIMINARY INJUNCTION**

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. Winters v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

**A. Likelihood of Success on the Merits**

To establish a likelihood of success on the merits of a trademark infringement claim, a plaintiff must establish that he is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." Grocery Outlet Inc. v. Albertson's Inc., 497 F.3d 949, 951 (9th Cir. 2007). The analysis is the same for infringement claims based on registered and unregistered trademarks. Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 n.6 (9th Cir. 1999); see 15 U.S.C. § 1125(a)(1).

*1. Ownership*

Reed has established a likelihood of success on his claim that he owns the rights to "The Platters" mark because (1) the 1987 stipulation no longer limits Reed's ability to assert rights to the mark, and (2) Reed can demonstrate prior use of the mark in commerce.[2] This Court agrees

---

[2] Plaintiffs argue Powell is infringing on their rights in the registered mark "Herb Reed and The Platters" as well as the unregistered mark "The Platters." Plaintiffs have offered evidence that Reed assigned his rights to the registered mark "Herb Reed and The Platters" to Plaintiff Herb Reed Enterprises, Inc., and the corporation assigned its rights to Plaintiff Herb Reed Enterprises, LLC. (Balboni Decl., Ex. B.) Further, Plaintiffs have acted as if they have rights to the registered mark "The Platters," but Plaintiffs have not offered evidence that Reed assigned his common law rights to the unregistered mark to either Plaintiff. Accordingly, only Reed can establish a likelihood of success on

7

with the Eastern District of New York's interpretation in 2001 of the 1987 stipulation—specifically Reed's consent to dismissal with prejudice and the escape clause—as barring "Reed from asserting that he has any right to the name 'The Platters' as against FPI or those claiming through FPI except as specifically allowed in the agreement." Marshak, 2001 WL 92225, at *15. Although the district court did not expand upon its conclusion that the escape clause applies to both FPI and "those claiming through FPI," the escape clause states that the agreement shall inure to FPI, "its successors and assigns." Accordingly, the escape clause must be triggered before Reed can sue FPI or anyone claiming to have acquired rights through FPI for trademark infringement.

It is unclear whether Powell is claiming to have acquired rights to "The Platters" through FPI. Powell argues that he acquired rights to "The Platters featuring Monroe Powell" through the 2002 stipulated judgment between FPI and Powell. But Powell has offered no evidence that FPI owned rights to "The Platters" in 2002 such that FPI could give Powell the right to perform as "The Platters featuring Monroe Powell." Thus, it is unclear whether the 1987 stipulation limits Reed's ability to sue Powell for trademark infringement. But even assuming that the 1987 stipulation applies, the escape clause has been triggered and no longer bars Reed from suing FPI or those claiming through FPI for trademark infringement.

According to this Court's default judgment in the Nevada action, FPI never acquired common law rights to "The Platters" mark and Reed has superior rights to the mark to all others. Thus this Court determined that FPI "has no right in the name 'The Platters'" as required by the 1987 stipulation. This Court was a "court of competent jurisdiction" because it exercised jurisdiction pursuant to 28 U.S.C. § 1331. The default judgment was entered on May 16, 2011, and FPI and PPI failed to appeal the judgment within thirty days as required by Federal Rule of

---

his claim that he owns the rights to "The Platters," but Reed is not a party to this case. The Court will require Plaintiffs to either (1) file an amended complaint adding Reed as a plaintiff, or (2) offer evidence that Reed has assigned his common law rights to "The Platters" to one or both Plaintiffs on or before February 13, 2012. This Preliminary Injunction will not go into effect until Plaintiffs comply with this requirement.

8

Appellate Procedure 4(a)(1)(A). As such, the default judgment qualifies as "a final order with all appeals being exhausted" and triggered the escape clause.

FPI failed to raise any defenses in the Nevada action. FPI could have argued that the 1987 stipulation precluded Reed from suing FPI for trademark infringement, or alternatively, the injunction issued in the New York action precluded Reed from suing FPI for trademark infringement. However, this Court need not decide whether such defenses would have been successful because this Court entered a default judgment, and FPI did not seek relief from the judgment, nor did FPI appeal the judgment. Accordingly, the 1987 stipulation no longer limits Reed's ability to assert rights in the name "The Platters."

Reed has established a likelihood of success on his claim that he acquired rights to the mark through prior use. "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). Reed and the original members of the group were the first to use the mark in commerce in 1953, and Reed has used the mark continuously since 1953 as "The Platters" and "Herb Reed and the Platters." Furthermore, because Powell began using the mark in 1970, seventeen years after Reed, Powell could not have acquired rights through prior use.

*2. Confusingly similar*

Reed has established a likelihood of success on his claim that "The Platters featuring Monroe Powell" is confusingly similar to "The Platters." The Ninth Circuit has adopted an eight factor non-exhaustive test for determining the likelihood of consumer confusion: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 & n.11

(9th Cir. 1979), abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 (9th Cir. 2003).

As an initial matter, Powell argues that "Monroe Powell's Platters" and "Monroe Powell and His Platters"—two names under which Powell does not currently perform but would be willing to perform—are not confusingly similar to "The Platters." However, the question before the Court is whether the name Powell currently uses is confusingly similar and thus infringes on Reed's trademark rights.

But even if Powell had argued that "The Platters featuring Monroe Powell" is not confusingly similar to "The Platters," the Court finds Reed has established a likelihood of success on the confusingly similar element for trademark infringement. First, although Powell argues "The Platters" mark has been diluted, Reed has offered evidence that The Platters was inducted into the Rock & Roll Hall of Fame in 1990, the Vocal Group Hall of Fame in 1998, and the Grammy Hall of Fame in 1999 and 2002. (Balboni Decl. ¶ 8.) Therefore, The Platters remains a famous musical group today and the first factor, strength of the mark, weighs in favor of finding a likelihood of success.

Second, goods are related when there is a likelihood that the consumer will "assume there is an association between the producers of the related goods, though no such association exists." Sleekcraft, 599 F.2d at 350. Although Powell argues he performs mostly internationally, "The Platters featuring Monroe Powell" is similar enough to "The Platters" that the consumer could believe the two groups are associated, when in fact Powell's group does not consist of any original members of The Platters. Thus, the second factor, proximity or relatedness of the goods, weighs in favor of finding a likelihood of success.

Third, although "The Platters featuring Monroe Powell" contains Powell's name, in Powell's advertising "The Platters" is in large font and "featuring Monroe Powell" is printed in a much smaller font below, which increases the likelihood of confusion. (Balboni Decl., Ex. C.) Additionally, Powell's website does not distinguish between Powell's group and the original

10

1  Platters group, and the website lists Platters hit singles from the 1950s and 1960s, suggesting that
2  Powell was a member when the group recorded those hits, when in fact FPI did not hire Powell to
3  perform until 1970.  (Id.)  As such, the third factor, similarity of the marks, weighs in favor of
4  finding a likelihood of success.

5         Fourth, although Plaintiffs have not offered evidence of actual confusion, Powell has
6  represented that if he changes his group's name to include "Tribute" or "Revue," venues could not
7  charge as much for tickets. (Defs.' Opp'n, Decl. of Don Gloude ("Gloude Decl.") ¶ 14.)  In other
8  words, venues charge one ticket price for an original group and a lower ticket price for a tribute
9  group.  Consumers currently pay the higher price to see "The Platters featuring Monroe Powell,"
10 which indicates a likelihood that consumers believe Powell's group includes original members of
11 The Platters, which it does not.  This confusion may be compounded by the fact that Reed, an
12 original member, is still alive and promoting his group as "Herb Reed and The Platters."  As a
13 result, the fourth factor, actual confusion, weighs in favor of finding a likelihood of success.

14        Fifth, both groups perform live and market through the Internet, which crosses
15 international lines.  Accordingly, the fifth factor, marketing channels used, weighs in favor of
16 finding a likelihood of success.

17        Sixth, Powell's group performs the same style of music and the same songs as the
18 original group, but Plaintiffs have not offered evidence of the degree of care likely to be exercised
19 by the purchaser of tickets.  Seventh, Plaintiffs have not offered evidence that Powell intended to
20 infringe on Reed's trademark.  Eighth, Plaintiffs have not offered evidence that Powell is likely to
21 expand his business.  Therefore, the sixth, seventh, and eighth factors weigh neutrally.  Because
22 five out of eight factors weigh in favor of a likelihood of confusion, and the remaining factors
23 weigh neutrally, Reed has established a likelihood of success on his claim that "The Platters
24 featuring Monroe Powell" is confusingly similar to "The Platters."
25 ///
26 ///

**B. Likelihood of Irreparable Harm**

Powell argues that "[i]n a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits.'" Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 n.4 (9th Cir. 2000)). But the United States Supreme Court recently held in Winters that a plaintiff must establish a likelihood of irreparable harm to qualify for a preliminary injunction. Winters, 55 U.S. at 20. The Ninth Circuit considered the impact of the Winters holding on the irreparable harm presumption in the context of a copyright infringement case and held that Winters overruled the presumption. Flexible Lifeline Sys., Inc. v. Precision Life, Inc., 654 F.3d 989, 997-98 (9th Cir. 2011). The Ninth Circuit explicitly disagreed with the plaintiff's argument that the Ninth Circuit reaffirmed the presumption in Marlyn because the Marlyn decision contained no analysis concerning the use of the irreparable harm presumption post-Winters. Id. at 997. Therefore, it is unclear whether the irreparable harm presumption can be applied to trademark infringement claims post-Winters.

Assuming Reed is not entitled to a presumption of irreparable harm, Reed has established a likelihood of irreparable harm. Continued use of the mark in a confusingly similar manner will likely damage Reed's reputation as a performer. Reed's reputation and rights to the mark will remain valuable to Reed after he stops performing. For example, Reed could license the mark to Powell for a fee. Moreover, Reed likely will lose goodwill among consumers if The Platters name continues to be diluted by groups not consisting of original members, but whose name is confusingly similar to "The Platters." Further, if the Court permits continued confusion over Reed's rights to the mark, additional groups similar to Powell's group could form and further harm Reed's reputation and goodwill.

**C. Balance of Hardships**

Powell argues that if the Court issues a preliminary injunction Powell may incur costs associated with correcting advertisements, renegotiating ticket prices, and cancelling performances.

12

(Gloude Decl. ¶¶ 9-12, 14.)  Powell also argues a preliminary injunction would cause loss of goodwill with venues and therefore loss of income.  (Id. ¶ 13.)  But given the likelihood of irreparable harm to Reed, the Court will address the risk of hardship to Powell with a bond.  Powell has offered no evidence of any actual costs that Powell will incur, so the Court will order a bond in the amount of $10,000.00, without prejudice to further address the bond amount through a supplemental memorandum.

### D. Public Interest

Trademark law seeks to prevent consumer confusion in the marketplace.  See 15 U.S.C. § 1125(a)(1).  As such, a preliminary injunction in this case would serve the public interest.

## III. ORDER AND PRELIMINARY INJUNCTION

IT IS THEREFORE ORDERED that Plaintiff Herb Reed Enterprises, Inc. and Herb Reed Enterprises, LLC's Motion for a Preliminary Injunction (Doc. #4) is GRANTED to the following extent:

> Defendants and their agents are preliminarily enjoined from use of the mark "The Platters," and any equivalent or phonetically similar names or marks, in connection with any vocal group in any advertisements, promotional, marketing, or other materials, with two narrow exceptions.
>
> First, Defendants may use the mark "The Platters" if the word "Tribute" or "Revue" is included and when displayed or advertised, the word "Tribute" or "Revue" is at least one half the font size of "The Platters."  Second, Defendants may use the mark "The Platters" in any other manner with Herb Reed's written permission.

IT IS FURTHER ORDERED that Plaintiffs Herb Reed Enterprises, Inc. and Herb Reed Enterprises, LLC shall secure this Preliminary Injunction by posting a bond in the amount of $10,000.00 with the Clerk of Court on or before February 13, 2012.

IT IS FURTHER ORDERED that Plaintiffs Herb Reed Enterprises, Inc. and Herb Reed Enterprises, LLC shall either (1) file an amended complaint adding Herb Reed as a plaintiff, or (2) offer evidence that Herb Reed has assigned his common law rights in "The Platters" to one or both Plaintiffs on or before February 13, 2012.  This Preliminary Injunction will not go into effect until

Plaintiffs comply with this requirement.

IT IS FURTHER ORDERED that the Clerk of Court shall amend the caption to correct the name of Defendant Dan Gloude to Don Gloude.

DATED: February 1, 2012

_____
PHILIP M. PRO
United States District Judge