# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| HERB REED ENTERPRISES, INC., et al., | Case No. 2:11-cv-02010-PMP-NJK |
| Plaintiff(s), | REPORT AND RECOMMENDATION |
| vs. | |
| MONROE POWELL'S PLATTERS, LLC, et al., | |
| Defendant(s). | |

Pending before the Court is the order for Defendant Monroe Powell ("Defendant" or "Mr. Powell") to show cause why he should not be sanctioned up to and including entry of default judgment for his failure to comply with Court orders. Docket No. 95. Defendant filed a written response. Docket No. 98.[1] Plaintiffs also filed a written response. Docket No. 100. Defendant filed a reply. Docket No. 101. The Court held a hearing on the matter on May 6, 2013. *See* Docket No. 109. For the reasons discussed below, the Court **RECOMMENDS** that Mr. Powell's answer be stricken and that default judgment be entered against him.[2]

---

[1] This response was filed twice. *See* Docket Nos. 97 and 98. It appears that the responses are identical, except that the later-filed response includes a declaration from Erik Fitting. *See* Docket No. 98-2. The Court relies on the later-filed response.

[2] In light of the Court's recommendation that Mr. Powell's answer be stricken and default judgment be entered against him, the motion to compel (Docket No. 89) is **DENIED** as moot to the extent it relates to Mr. Powell.

Also before the Court is Plaintiffs' request for expenses incurred as the result of Mr. Powell's disobedience with the Court's orders. *See* Docket No. 100 at 2, 6 (requesting expenses pursuant to Rule 37(b)(2)).[3] In particular, Plaintiffs request attorneys' fees and costs incurred in filing their renewed motion to compel. *See* Docket No. 110. Mr. Powell filed a response and Plaintiffs filed a reply. Docket Nos. 115, 116. Plaintiffs also filed a request for attorneys' fees and costs incurred in responding to the Court's order to show cause. *See* Docket No. 123. Mr. Powell filed a response and Plaintiffs filed a reply. *See* Docket Nos. 126, 127.[4] For the reasons discussed below, the Court **ORDERS** that Mr. Powell and his attorney, Erik Fitting, are jointly and severally responsible for paying Plaintiffs $5,952.26 in attorneys' fees and costs.

## I. FINDINGS OF FACT

On May 11, 2012, Plaintiffs served interrogatories, requests for production, and requests for admission on Mr. Powell. *See, e.g.*, Docket Nos. 73, 74.[5] Mr. Powell admits that (through then-counsel, John DiCorsi) he "failed to answer any of Plaintiffs' discovery in a timely fashion." Docket No. 115 at 5.[6] In particular, by June 21, 2012, Mr. Powell had not responded. Plaintiffs emailed Mr. Powell's counsel on June 21, 2012 and June 27, 2012, requesting responses to the propounded discovery. Mr. Powell's counsel responded on June 28, 2012, requesting the discovery deadline be postponed until July 5, 2012. On June 29, 2012, the parties conducted a telephone

---

[3] Unless otherwise noted, references to "Rules" refer to the Federal Rules of Civil Procedure.

[4] The Court also has before it supplemental filings addressing two issues. First, the Court required supplemental filings as to how the hours worked by Plaintiffs' counsel on the motion to compel should be divided as the motion related to outstanding discovery owed by both Mr. Gloude and Mr. Powell. Docket No. 119. The parties filed papers in response to that inquiry. Docket Nos. 122, 126. Second, the Court provided notice to Mr. Powell and his counsel that expenses may be awarded against a party, a party's attorney, or both. Docket No. 120. Mr. Powell, through his counsel, responded to that notice. *See* Docket No. 126; *see also* Docket No. 121.

[5] To the extent citation is not provided in this section, the relevant facts are taken from the Court's orders at Docket Nos. 73 and 74. No objections were filed with respect to those orders.

[6] On July 23, 2012, Mr. DaCorsi filed a motion to withdraw, which was subsequently granted. Docket Nos. 48, 65. Mr. Powell retained new counsel (Erik Fitting) by September 24, 2012. *See, e.g.*, Docket Nos. 67 (filing by Erik Fitting).

2

conference, during which the Plaintiffs informed Mr. Powell's counsel that they did not agree to the July 5, 2012 extension.

On July 6, 2012, Mr. Powell served responses to the requests for admission. Plaintiffs responded by indicating that the admissions were deemed admitted because Mr. Powell's responses were late. On July 9, 2012, Mr. Powell filed a motion to withdraw Admission Nos. 29, 30, 31, and 32. Admission Nos. 29 and 30 state that Defendants never had rights to the trademark THE PLATTERS. Admission Nos. 31 and 32 state that the Plaintiffs' rights to the trademark THE PLATTERS are superior to those of Defendants. Mr. Powell sought to amend these admissions to indicate that he was unable to admit or deny them. On October 24, 2012, Magistrate Judge Johnston denied Mr. Powell's motion. Judge Johnston concluded that the admissions "effectively precluded the Defendants from mounting a defense," but that relief was not proper because the amendments sought were pointless in that they would simply change Mr. Powell's position from one of "admitting that [Defendants] have no case to [one of] admitting that they do not know whether they have a case." Docket No. 74 at 3. Judge Johnston further found that relief was improper in light of Mr. Powell's conduct: "the Defendants failed to respond to the requests in a timely manner and failed to demonstrate good cause for their delay. Further the Defendants did not file a timely reply to the motion." *Id.* at 4.

Mr. Powell served answers to the interrogatories on July 6, 2012, and served responses to the requests for production on July 18, 2012. On September 4, 2012, Plaintiffs moved to compel complete responses to their interrogatories and requests for production, asserting that Mr. Powell's responses were late and not adequate. On October 24, 2012, Judge Johnston granted the motion almost in its entirety. With respect to the interrogatory responses, Mr. Powell had argued that, *inter alia*, he had no further information to provide. Judge Johnston rejected that argument as "disingenuous." Docket No. 73 at 3. As such, the Court ordered Mr. Powell to provide responses to Interrogatory Nos. 7, 8 and 9 by November 2, 2012. Docket No. 73 at 3. With respect to Requests for Production Nos. 4, 5, 6, 17, 19, 20, 21 and 22, Judge Johnston rejected Mr. Powell's argument that he had no obligation to produce documents other than those in his personal possession. Instead, the Court found it clear that many of the responsive documents were in the possession of those who

1  manage Mr. Powell's affairs, and that he was required to produce responsive documents in their
2  possession. Docket No. 73 at 4.  The Court ordered that supplemental interrogatory responses and
3  document productions must be completed by November 2, 2012. *Id.*
4    Mr. Powell did not comply with Judge Johnston's order.
5    At a hearing on December 20, 2012, based on the representations made during the hearing by
6  Mr. Powell's counsel, United States District Judge Pro again ordered that the discovery ordered by
7  Judge Johnston must be provided, this time no later than January 15, 2013. *See* Docket No. 80; *see*
8  *also* Docket No. 89-1 at ¶ 18.  Judge Pro concluded the hearing by advising counsel to, *inter alia*,
9  "focus on getting the discovery complete." *See* 12/20/12 Hearing Recording at 3:10 p.m.
10   Mr. Powell did not comply with Judge Pro's order.
11   On March 1, 2013, Plaintiffs filed a renewed motion to compel seeking, *inter alia*, Mr.
12  Powell's compliance with the Court's orders. Docket No. 89.[7]  On March 6, 2013, Mr. Powell filed
13  a response. Docket No. 91.  His substantive response to the second motion to compel consists of 11
14  lines of text. *See id.* at 9.  With respect to the document production, Mr. Powell stated only that his
15  attorney was "in the process of drafting a supplement" and that the documents would be produced
16  within the week. *Id.*  With respect to the interrogatories, Mr. Powell stated that his memory is faulty
17  and "Plaintiffs would have been better served if those questions had been directed to Don Gloude."
18  *Id.*  Judge Johnston had already rejected this argument as disingenuous months earlier. Docket No.
19  73 at 3.[8]
20   As a result, the Court issued an order to show cause why sanctions should not be imposed on
21  Mr. Powell up to and including entry of default judgment. Docket No. 95.  For their part, "Plaintiffs
22  urge[d] the Court to enter default judgment as to [Mr.] Powell because his conduct has interfered

---

[7] By that date, not only had the deadlines set by Judge Pro and Judge Johnston lapsed, but the discovery cut-off and the deadline for filing dispositive motions had passed.  *See* Docket No. 71 (setting discovery cut-off of January 9, 2013, and dispositive motion deadline of February 11, 2013).  In his order setting the latter deadlines, Judge Johnston indicated that he "will NOT grant any further extensions of the discovery deadline."  *Id.*

[8] As noted above, Mr. Powell did not object to Judge Johnston's orders. *See* L.R. IB 3-1(a).

1  with the Court's ability to hear this case, delayed litigation, disrupted the Court's timely
2  management of its docket, wasted judicial resources, and threatened the integrity of the Court's
3  orders and the orderly administration of justice." *See* Docket No. 100 at 1.[9]
4      Mr. Powell asserts myriad reasons for failing to timely comply with the Court's orders. *See,*
5  *e.g.*, Docket No. 98 at 3-4. In particular, Mr. Powell argues that the failure to comply was caused
6  by: (1) his counsel's illness; (2) the fact that Defendants were touring in December; (3) the need for
7  his counsel to respond to the Plaintiffs' motion for summary judgment, which he asserts took
8  precedence over complying with the Court's discovery orders; and (4) the fact that "Defendants' file
9  was voluminous and many of the documents requested were not in either Mr. Gloude or Mr.
10 Powell's possession." *See, e.g.*, Docket No. 98-2 at ¶¶ 6, 8, 12, 13, 14 (declaration of Erik Fitting).
11 Mr. Powell's attorney further asserts that "just as promised, after completing the Opposition [to the
12 motion for summary judgment], [he] completed the discovery responses and sent them to Plaintiffs'
13 local counsel on March 11, 2013." *Id.* at ¶ 16.

## II. ANALYSIS

Plaintiffs request two forms of sanctions based on Mr. Powell's failure to comply with the Court's discovery orders. First, and most significantly, they seek case-terminating sanctions against Mr. Powell. Docket No. 100 at 1; *see also* Rule 37(b)(2)(A)(iii), (vi). Second, Plaintiffs seek to recover their expenses caused by Mr. Powell's disobedience of the Court's orders. Docket No. 100 at 2, 6; *see also* Rule 37(b)(2)(C). The Court addresses each sanction in turn.

### A. CASE-DISPOSITIVE SANCTION

The broad, underlying purpose of the Rules is to "secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Rule 1. It is with that charge as a guide that this Court construes and administers the Rules. There are several mechanisms whereby the Court can accomplish this goal, such as entering case-dispositive sanctions against a party that fails to comply with the Rules or unnecessarily multiplies the proceedings.

---

[9] The Court notes that, throughout this period, Plaintiffs agreed to several discovery extensions requested by Defendants in an effort to receive the discovery they had requested. *See, e.g.*, Docket No. 89-1 at ¶¶ 25, 39. The extended deadlines were not met.

1 Rule 16 is a central pretrial rule that authorizes the Court to manage cases "so that
2 disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is
3 improved, and settlement is facilitated." *In re Phenylpropanolamine Prods. Liability Litig.*, 460
4 F.3d 1217, 1227 (9th Cir. 2006). "Subsection (f) puts teeth into these objectives by permitting the
5 judge to make such orders as are just for a party's failure to obey a scheduling or pretrial order." *Id*.
6 Rule 16(f) specifically provides that "the court may issue any just orders, including those authorized
7 by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling order or other
8 pretrial order." Rule 16(f)(1)(C).

9 Rule 37 governs discovery disputes and sanctions stemming therefrom. Similar to Rule 16,
10 Rule 37 provides for sanctions against a party that fails to comply with discovery orders. Rule
11 37(b)(2)(A) states, "[i]f a party . . . fails to obey an order to provide or permit discovery, including
12 an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just
13 orders." The Court has the authority to impose sanctions *sua sponte* pursuant to Rule 37(b)(2)(A).
14 *See, e.g.*, *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011). The term "order" in Rule
15 37(b)(2)(A) is interpreted broadly. *See, e.g.*, *id.* ("order" includes orders that were not noticed,
16 opposed or heard in a formal manner, as well as oral orders).[10]

17 The Court has "great latitude" in fashioning sanctions pursuant to Rule 37. *See Lew v. Kona*
18 *Hosp.*, 754 F.2d 1420, 1426 (9th Cir. 1985); *see also* Rule 37(b)(2)(A) (authorizing any "just"
19 remedy). In appropriate situations, the Court may find that a severe sanction is necessary to prevent
20 some benefit to the sanctioned party. *See National Hockey League v. Metropolitan Hockey Club*,

---

[10] Mr. Powell argues, without citation to case law, that sanctions under Rule 37(b)(2) may only be imposed based on the conduct of a party and not based on the conduct of counsel. *See* Docket No. 101 at 2. Consequently, he argues that sanctions are not proper "[b]ecause the disclosures were late solely due to Defendants' counsel." *Id.* As discussed more fully below, the Court disagrees with the factual premise that Mr. Powell's conduct was not the cause of the discovery violations. The Court also notes, however, that the Ninth Circuit has repeatedly rejected the contention that a party cannot be penalized for the actions of its counsel, including dismissal under Rule 37(b)(2). *See Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385, 1387 (9th Cir. 1988) ("There is certainly no merit to the contention that dismissal of [the party's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." (quoting *Link v. Wabash RR Co.*, 370 U.S. 626, 633-34 (1962)); *see also Malone v. U.S. Postal Serv.*, 833 F.2d 128, 134 (9th Cir. 1987).

*Inc.*, 427 U.S. 639, 642 (1976) (finding that extreme sanction of dismissal was appropriate due to respondents' flagrant bad faith and their counsel's callous disregard of responsibilities). Two sanctions available to the Court under Rule 37(b)(2)(A) are striking a defendant's answer and entering default judgment against him.

When sanctions are warranted, the Court must determine the appropriate level or severity of the sanctions based on the circumstances of the case. A case-dispositive sanction is a harsh penalty reserved for extreme circumstances. *See Henry v. Gill Industries*, 983 F.2d 943, 948 (9th Cir. 1993). As a result, the Ninth Circuit has constructed a five-factor analysis to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012). The test provides courts with a way to think about what to do rather than a set of conditions precedent for imposing sanctions. *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). The Court will now address the relevant factors in deciding whether a case-dispositive sanction against Mr. Powell is warranted.

### 1. Expeditious Resolution of Litigation

Where a court order is violated, the first factor supports case-dispositive sanctions. *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir. 1990). "Orderly and expeditious resolution of disputes is of great importance to the rule of law. By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *Phenylpropanolamine Prods.*, 460 F.3d at 1227. Here, Mr. Powell failed to comply with the Court's orders to provide discovery. This behavior is inconsistent with Rule 1's directive to "secure a just, speedy, and inexpensive" determination of this action. *See Daniels v. Jenson*, 2013 WL 1332248, *3 (D. Nev. Mar. 11, 2013), *adopted*, 2013 WL 1333330 (D. Nev. Apr. 1, 2013)

### 2. Court's Need to Manage Its Docket

Where a court order is violated, the second factor also supports case-dispositive sanctions.

1  *Adriana,* 913 F.2d at 1412.  It has long been recognized that the court's inherent power to control its
2  docket includes the ability to issue severe sanctions, such as striking an answer or entering a default
3  judgment, where appropriate.  *See Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829,
4  831 (9th Cir. 1986).  Indeed, the Supreme Court has noted that case-dispositive sanctions "must be
5  available to the district court in appropriate cases, not merely to penalize those whose conduct may
6  be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in
7  the absence of such a deterrent."  *National Hockey League*, 427 U.S. at 643.

8  Mr. Powell's refusal to comply with the discovery orders of the Court has thwarted the
9  advancement of the case by making it difficult for the Court to effectively manage its docket.
10 Indeed, Mr. Powell failed to comply with those Court orders not only by the deadlines imposed by
11 the Court, but also by the discovery cut-off date or even the dispositive motion deadline.

12 **3.     Risk of Prejudice**

13 The Ninth Circuit has held that the failure to produce discovery as ordered is considered
14 sufficient prejudice to the opposing party.  *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997)
15 (quoting *Adriana*, 913 F.2d at 1412).  The actions of an opposing party that impair the ability to go
16 to trial or interfere with the rightful decision of the case are prejudicial.  *Id.*  Where a party fails to
17 tender discovery until the eve of the discovery cut-off or after the discovery cut-off, the opposing
18 party is foreclosed of any meaningful opportunity to follow up on that information or to incorporate
19 it into their litigation strategy.  *Id.*

20 Mr. Powell has refused to meaningfully participate in discovery in this case through his
21 habitual failure to comply with his discovery obligations and willful violation of Court orders.  By
22 the time he filed his response to the renewed motion to compel on March 6, 2013 (after both the
23 close of discovery and the dispositive motion deadline), he had already failed to provide the
24 discovery ordered by the Court months earlier.  These actions are highly prejudicial and impair the
25 ability of Plaintiffs to go to trial.

26 **4.     Public Policy**

27 "[T]he public policy favoring disposition of cases on their merits strongly counsels against"
28 case-dispositive sanctions.  *Phynylpropanolamine Prods.*, 460 F.3d at 1228 (citation omitted).

8

Although this factor may cut against recommending case-dispositive sanctions on Mr. Powell, it is not enough to prevent such a recommendation. *See Daniels*, 2013 WL 1332248, *3. Indeed, Mr. Powell's lack of participation in the discovery process has made it impossible for the Court to continue the case with reasonable assurance that Plaintiffs would have sufficient access to facts needed to prosecute their claims.

### 5. Less Drastic Sanctions

The Court must consider the adequacy of less drastic sanctions before imposing a case-dispositive sanction. In particular, the Ninth Circuit looks to (1) whether this Court considered lesser sanctions; (2) whether it tried lesser sanctions; and (3) whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. *See, e.g.*, *Hester*, 687 F.3d at 1170. The Ninth Circuit has indicated that it is not always necessary to impose less severe sanctions first, or to give any explicit warning that a case-dispositive sanction may be imposed. *Valley Eng'rs*, 158 F.3d at 1057. Indeed, courts may consider all of the offending party's discovery conduct when making its determination of the appropriate sanction. *Henry*, 983 F.2d at 947. However, the disobedient party's conduct must be due to willfulness, fault, or bad faith for a case-dispositive sanction to be appropriate. *Id.* at 946-47. A party's repeated failure to comply with discovery requests and the Court's discovery orders manifests the requisite fault and justifies case-dispositive sanctions. *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).

Mr. Powell has been told by the Court twice that he is unlikely to succeed in this case. On February 1, 2013, Judge Pro granted Plaintiffs' motion for a preliminary injunction, concluding that five of eight *Sleekcraft* factors weigh in favor of infringement and the remaining three were neutral, and holding that Plaintiff established a likelihood of success on the merits. *See* Docket No. 26 at 7-11. Shortly after Judge Pro indicated that Mr. Powell was likely to lose on the merits, Mr. Powell failed to timely respond to the discovery requests that Plaintiffs propounded on him in May 2012. *See, e.g.*, Docket No. 74 at 4 (Mr. Powell "failed to respond to the requests [for admission] in a timely manner and failed to demonstrate good case for the[] delay"); *see also* Docket No. 115 at 5 (Mr. Powell acknowledging that he and his previous counsel "failed to answer any of Plaintiffs' discovery in a timely fashion"). Then again on October 24, 2012, Judge Johnston indicated that Mr.

1  Powell was unlikely to succeed in defending this case. Docket No. 74 at 3, 4 (order denying motion
2  to amend requests for admission, finding that "Defendants have already effectively asserted that they
3  have no defense" and "the Defendants appear unlikely to prevail in this litigation"). Mr. Powell
4  then failed to comply with Judge Johnston's order compelling discovery responses by November 2,
5  2012.

6  Indeed, notwithstanding that his discovery violations to that point led to detrimental
7  repercussions,[11] Mr. Powell continued to habitually disregard his discovery obligations and the
8  orders of the Court. That habitual disregard is highlighted in his response to the most recent motion
9  to compel filed by Plaintiffs. *See* Docket No. 91. That motion to compel resulted from Mr.
10 Powell's failure to comply with two Court orders to supplement his document production and
11 interrogatory responses. The supplemental discovery responses were ordered by the Court to be
12 provided no later than November 2, 2012, and then again no later than January 15, 2013. The Court
13 emphasized the importance of timely providing that discovery. *See* Docket No. 71 (order by Judge
14 Johnston indicating that the Court "will NOT grant any further extensions of the discovery
15 deadline"); 12/20/12 Hearing Recording at 3:10 p.m. (hearing before Judge Pro advising counsel to,
16 *inter alia*, "focus on getting the discovery complete"). On March 6, 2013, more than four months
17 after the initial deadline set by the Court to provide that discovery, roughly two months after the
18 discovery cut-off date and the second deadline ordered by the Court to provide that discovery, and
19 roughly one month after the dispositive motion deadline, Mr. Powell responded to the renewed
20 motion to compel with less than one page of substantive argument that merely (1) stated that he
21 intended to produce the documents within the following week and (2) recycled the arguments
22 regarding his ability to respond to the interrogatories that Judge Johnston had found months earlier
23 to be disingenuous. Docket No. 91 at 9. The time for producing those documents and for contesting
24 Mr. Powell's ability to respond to the interrogatories had come and gone months earlier.

25 Mr. Powell argues now–through his attorney–that any delay was the result of his attorneys'

---

27 [11] As stated by Defendant, he (through his then-attorney, Mr. DiCorsi) "failed to answer any of
   Plaintiffs' discovery in a timely fashion which ultimately led to Defendants' Response to Requests for
28 Admissions becoming deemed admitted, and Defendant waiving all objections." Docket No. 115 at 5.

shortcomings, pointing primarily to Mr. Fitting's health issues.[12] Mr. Fitting states that, "[b]ecause of my medical condition and hospitalization, I was unable to work on Mr. Powell's discovery responses within the time frame as I had originally been allotted." Docket No. 98-2 at ¶ 10. That argument does not hold water. In particular, that contention is contradicted by Mr. Fitting's own prior statements. In an email sent January 23, 2013, Mr. Fitting lamented Defendants' failure to produce the requested discovery. He noted to opposing counsel that, "unfortunately in this profession, you sometimes run into clients that prove to be less than forethcomming [sic]." Docket No. 89-8 at 2. He continued to acknowledge his clients' failure to cooperate, explaining that:

> I have been able to procure an appointment with the Defendants for tomorow [sic] afternoon. I have let them know about my grievances in terms that clearly could not be misunderstood. I even went so far as to confront them with some of the information I descovered [sic] independantly [sic], to which they seemed to have no reasonable explantion [sic]. I will certainly conduct a complete interrogation tomorow [sic].

*Id.* at 1. In light of this failure to cooperate, Mr. Fitting stated that he felt compelled to "take matters into my own hands (above and beyon [sic] what my Clients have provided me)." *Id.* Mr. Fitting then indicated that he had decided not to provide any supplemental discovery response at all rather than an incomplete response. *Id.*; *see also* Docket No. 89-1 at ¶ 29.

Similarly, during a telephone call on February 26, 2013, Mr. Fitting stated that "his clients were generally unresponsive and did not seem to take discovery issues seriously." Docket No. 89-1 at ¶ 30. He also

> indicated that even after [Defendants] told him they had additional information, they neither provided it nor assisted him in procuring it. He said after a meeting in which they discussed the need to get the additional information, they would not call him back for weeks, even though deadlines were looming.

*Id.* Mr. Fitting indicated that "every time he discussed discovery with [opposing counsel] or read Plaintiffs' filings, he was made aware of more information that Defendants should have, but had not given him." *Id.* at ¶ 35. Mr. Fitting suggested that "an order from the Court might encourage his

---

[12] The Court notes at the outset of this discussion that the assertion that Mr. Powell is blameless and that any fault lies with counsel is significantly undercut by the fact that Mr. Powell's pattern of inexcusable discovery violations span representations of him by multiple attorneys.

clients to be more cooperative." *See id.* at ¶ 38.[13]

Moreover, Mr. Fitting's conduct and communications during this period belie an assertion that his health was to blame for the failure to provide the ordered discovery. On December 13, 2012, he indicated that he was indeed working on providing the discovery. *See, e.g.*, Docket No. 89-6 (email from Erik Fitting indicating that he was "allowed to work about 4-6 hours per day, but have this case on high priority"). Mr. Fitting then attended the December 20, 2012, hearing before Judge Pro at which he stated that an extended deadline of January 15, 2013, would be sufficient time to comply with Judge Johnston's order. *See* 12/20/12 Hearing Recording at 3:01 p.m. to 3:03 p.m. On January 15, 2013, Mr. Fitting even represented to opposing counsel that he had discovery to provide that day. *See* Docket No. 89-7 ("I am having difficulty getting to your office to drop off the Discovery . . . I can scan the documents and e-mail them to you. I will do this tonight as soon as I can get out of here and get access to the file."); *see also* Docket No. 89-1 at ¶ 19 (discussing correspondence from January 15, 2013). In short, while the Court acknowledges Mr. Fitting's health problems, *see* Docket No. 98 Exh. A, they simply do not account for the failure to comply with the Court's orders.[14]

Lastly, the possibility of case-terminating sanctions cannot come as a surprise to Mr. Powell. Even where no explicit warning has been given, the text of Rules 16 and 37 gives parties notice of the possibility of case-terminating sanctions for willful failure to obey Court orders. *See Malone*, 833 F.2d at 133; *Valley Eng'rs*, 158 F.3d at 1057. What is most critical for case-dispositive sanctions is whether the party has a pattern of discovery abuses that make it impossible for the Court to conduct the trial with any reasonable assurance that the truth would be available. *Valley Eng'rs*, 158 F.3d at 1057-58. It is not clear to the Court that Mr. Powell has any viable defense and the

---

[13] The reply brief (signed by Mr. Fitting) attempts to clarify some of these communications, but fails to provide any persuasive explanation. *See* Docket No. 101 at 5-6. Notably absent from the record is a declaration from Mr. Powell outlining his efforts to comply with his discovery obligations.

[14] The Court likewise finds that the other arguments raised by Mr. Powell do not provide a justification for the failure to abide by the Court orders. For example, reference to work on opposing the motion for summary judgment is unpersuasive, as the motion for summary judgment was not filed until more than three weeks after the January 15, 2013 deadline. *See* Docket No. 82.

Court can only conclude that Mr. Powell does not intend to meaningfully participate in this case, but rather is simply delaying entry of judgment. His failure to meaningfully participate in discovery has prejudiced Plaintiffs' ability to prosecute their claims. In these circumstances, recommendation of default judgment is appropriate even where previous warnings of the possibility of case-dispositive sanctions have not been given. *See, e.g.*, *Wachovia Bank, N.A. v. Chaparral Contracting, Inc.*, 2010 WL 2667204, *2, 3 (D. Nev. June 14, 2010), *adopted*, 2010 WL 2667203 (D. Nev. June 29, 2010).

### 6. Conclusion

For the reasons discussed above, the Court concludes that Mr. Powell acted willfully in failing to abide by the Court's orders to produce the disputed discovery. The Court further concludes that the factors addressed above militate strongly in favor of case-dispositive sanctions against Mr. Powell, that a less drastic sanction would not be adequate, and that it is not necessary to first warn Mr. Powell of the possibility of case-dispositive sanctions. Accordingly, the Court hereby **RECOMMENDS** that Mr. Powell's Answer be stricken and that default judgment be entered against him.

### B. EXPENSES

Plaintiffs also seek to recover their expenses in filing the renewed motion to compel as it relates to Mr. Powell and in filing the briefing ordered by the Court on the order to show cause. *See* Docket No. 110 (requesting expenses incurred for motion to compel); Docket No. 123 (requesting expenses incurred in responding to order to show cause).

### 1. Entitlement to Expenses

Where a party fails to comply with a court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances exist making an award of expenses unjust." Rule 37(b)(2)(C). An award of expenses may be imposed in addition to the sanctions outlined in Rule 37(b)(2)(A). *Id.* The disobedient party has the burden of establishing a substantial justification or special circumstances. *See, e.g.*, *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983). No substantial justification or other

1  circumstances exist here making an award of expenses unjust.[15]

## 2. Calculation of Expenses

The expenses requested by Plaintiffs are primarily comprised of their attorneys' fees. Reasonable attorneys' fees are generally based on the traditional "lodestar" method. Under the lodestar method, the Court determines a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar figure is presumptively reasonable. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).[16]

### a. Expenses Incurred on Motion to Compel

Plaintiffs seek to recover $2,304.48 in attorneys' fees and $168.98 in costs incurred in bringing the renewed motion to compel as it related to Mr. Powell. *See* Docket No. 122 at ¶ 7. Plaintiffs derive this number by multiplying the total fees sought for the motion to compel by 24%, as that represents their approximation of the percentage of time spent regarding the motion to compel as it related to Mr. Powell. *See* Docket No. 122 at ¶¶ 4-5, 7. Defendants argue that only 10% of the fees should be allocated to Mr. Powell. *See* Docket No. 126 at 3. The Court finds Plaintiffs' position to be a more accurate reflection of the time spent on the motion to compel.

Defendant and his counsel do not otherwise provide argument opposing the number of hours worked or the rates requested with respect to the motion to compel. Similarly, they do not provide

---

[15] Defendant and his counsel argue that Plaintiffs' most recent motion to compel was filed "prematurely," and that "if the Motion had not been filed prematurely, the Order to Show Cause would never have been ordered." Docket No. 126 at 6. The Court disagrees.

The renewed motion to compel (as it relates to Mr. Powell) was filed as a result of Mr. Powell's disobedience of the Court's orders to provide the discovery months earlier. Similarly, that disobedience prompted the Court to order briefing from Mr. Powell and Plaintiffs with respect to its order to show cause. Expenses incurred in bringing the renewed motion to compel (as it relates to Mr. Powell) and in responding to the order to show cause were quite simply caused by Mr. Powell's disobedience. Such expenses are therefore recoverable under Rule 37(b)(2)(C).

[16] The Court may also adjust the loadstar based on a number of additional factors not subsumed in the initial calculation. *See Van Guerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). As neither party argues for an adjustment, the Court finds the lodestar amount to be reasonable.

any argument with respect to the calculation of costs. As such, this aspect of the motion is unopposed. *See* Local Rule 7-2(d); Local Rule 54-16(d). Accordingly, the Court awards $2,304.48 in attorneys' fees and $168.98 in costs in relation to Plaintiffs' filing of the renewed motion to compel as it related to Mr. Powell.

### b. Expenses Incurred Responding to Order to Show Cause

Plaintiffs seek to recover $3,680 in attorneys' fees and $166.80 in costs associated with responding to the order to show cause. *See* Docket No. 123 at ¶ 4. Defendant and his counsel object to the hours as excessive. In particular, they object to Plaintiffs' counsel spending 7.4 hours drafting their response to the order to show cause, noting that the response itself was five-pages long. *See* Docket No. 126 at 6-7. Similarly, they object to two attorneys spending a combined .3 hours reviewing the Court's order to show cause because that "document was only a few pages long." *Id.* at 6. Plaintiffs responded with a further declaration explaining why the amount of time spent was reasonable, including the need to research and analyze the various factors enunciated by the Ninth Circuit in *Hester*, 687 F.3d 1162, and compiling correspondence and pleadings from this case to be incorporated in their response. *See* Docket No. 127 at ¶¶ 3-5. Plaintiffs further cite to case law indicating that spending one hour per page of "fairly routine" briefing is reasonable. *See Thompson v. Astrue*, 2012 WL 5949218, *1 (E.D. Cal. Nov. 28, 2012) (citing *Pierce v. Astrue*, 2012 WL 1595783, *3 (N.D. Cal. May 4, 2012)); *but see Alutiiq Int'l Solutions, LLC v. Lyon*, 2012 WL 4182026, *2, 4 (D. Nev. Sept. 17, 2012) (reducing hours for 13-page motion to compel from 13.8 hours to 4 hours).

The Court has reviewed the hours spent by Plaintiffs' counsel and has considered the hours claimed in relation to the issues raised, the need to review the record and pleadings, and the need to conduct legal research. Based on the Court's review of the billing records and Plaintiffs' explanations for the hours billed, the Court finds that the hours claimed are on the higher end of what it would expect as reasonably necessary for litigating the order to show cause. The bulk of the time claimed is reasonable, however. As such, the Court exercises its discretion to provide a modest reduction of 10% of the total fees claimed. *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (court may impose up to a 10 percent "haircut" based on its exercise of

discretion); *see also Cruz v. Alhambra School Dist.*, 601 F. Supp. 2d 1183, 1193 (C.D. Cal. 2009). The Court finds this reduction sufficient to cure any potential over-billing.

Accordingly, the Court awards $3,312 in attorneys' fees and $166.80 in costs associated with responding to the order to show cause.

### 3. Party Against Whom Expenses are Awarded

Sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C) may be issued against a party, a party's attorney, or both. *See* Fed. R. Civ. P. 37(b)(2)(C) (allowing for recovery of expenses, including attorneys' fees, against "the disobedient party, the attorney advising that party, or both"). Hence, the Court has the authority to award fees under Rule 37 against a party and counsel jointly and severally. *See, e.g.*, *Toth*, 862 F.2d at 1387. Imposing sanctions against a party and counsel jointly and severally is appropriate where it is unclear based on the record which is less blameworthy than the other. *See, e.g.*, *In re George*, 322 F.3d 586, 592 (9th Cir. 2003) (citing *Int'l Union of Bricklayers & Allied Craftsmen Local Union No. 20, AFL-CIO v. Jaska*, 752 F.2d 1401, 1407 & n.8 (9th Cir. 1985)) (parties are in the best position between them as to who caused the sanctionable conduct); *see also Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985).

In this case, Defendant's counsel argues that Mr. Powell was not at fault in failing to provide discovery. *See, e.g.*, Docket No. 126 at 5 ("Defendants . . . are not responsible for any culpable conduct.") To that end, counsel asserts that he is to blame for any discovery shortcomings and, as a result, "sanctions . . . should be imposed against the attorney of record and not the Defendants." *See Id.* But the Court also has significant evidence before it directly contradicting that assertion. *See, e.g.*, Section II.A.5. In light of this evidence, the Court declines to impose the sanctions on counsel alone. Instead, the Court finds it most appropriate to impose the sanctions jointly and severally against Mr. Powell and his counsel, Erik Fitting.[17]

## III.  CONCLUSION

For the reasons more fully articulated above, the Court hereby rules as follows:

---

[17] Since the sanctions are imposed jointly and severally, Mr. Powell and Mr. Fitting are free to determine among themselves how the sanctions should be apportioned. They are both, however, ultimately responsible for the timely payment of the sanction to Plaintiffs.

- • The Court **RECOMMENDS** that Mr. Powell's answer be stricken and that default judgment be entered against him.
- • Plaintiffs' request for expenses is **GRANTED** in part.  The Court **ORDERS** that Mr. Powell and his attorney, Erik Fitting, are jointly and severally responsible to pay $5,952.26 in attorneys' fees and costs to Plaintiffs.  <u>That payment shall be made to Plaintiffs no later than July 22, 2013</u>.
- • Plaintiffs' motion to compel (Docket No. 89) is **DENIED** as moot as it relates to Mr. Powell.

## NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within (14) days after service of this Notice. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985), *reh'g denied*, 474 U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: July 11, 2013

_____
NANCY J. KOPPE
United States Magistrate Judge