1

2

3

4

5

6                                  UNITED STATES DISTRICT COURT

7                                        DISTRICT OF NEVADA

8                                               * * *

HERB REED ENTERPRISES, INC., and     )
9  HERB REED ENTERPRISES, LLC,           )
                                        )
10              Plaintiffs,              )
                                        )
11   v.                                  )
                                        )          2:11-CV-02010-PMP-NJK
12   MONROE POWELL'S PLATTERS, LLC;      )
     MONROE POWELL; and DON              )          ORDER
13   GLOUDE,                             )
                                        )
14              Defendants.              )
                                        )

15

16              Presently before this Court is Plaintiff Herb Reed Enterprises, Inc. and Herb Reed

17   Enterprises, LLC's Second Motion for an Order to Show Cause Why Defendants, Maurey

18   Robinson and Picone & Robinson Should Not Be Held in Contempt and Sanctioned (Doc.

19   #153), filed on December 13, 2013.  Defendants Monroe Powell; Monroe Powell's Platters,

20   LLC; and Don Gloude filed an Opposition (Doc. #157) on December 27, 2013.  Plaintiffs

21   filed a Reply (Doc. #159) on January 6, 2014.  The Court held a hearing on the Motion on

22   February 10, 2014.  (Mins. of Proceedings (Doc. #163).)

23   **I. BACKGROUND**

24              The parties are familiar with the facts of this case, and the Court will not repeat

25   them here except where necessary.  On February 1, 2012, this Court granted Plaintiffs'

26   Motion for a Preliminary Injunction (Order (Doc. #26)), and ordered as follows:

> Defendants and their agents are preliminarily enjoined from use of the mark "The Platters," and any equivalent or phonetically similar names or marks, in connection with any vocal group in any advertisements, promotional, marketing, or other materials, with two narrow exceptions.
>
> First, Defendants may use the mark "The Platters" if the word "Tribute" or "Revue" is included and when displayed or advertised, the word "Tribute" or "Revue" is at least one half the font size of "The Platters."  Second, Defendants may use the mark "The Platters" in any other manner with Herb Reed's written permission.

(Id. at 13.)  Plaintiffs now allege several violations of the preliminary injunction Order by Defendants, as well as by nonparties Maurey Robinson ("Robinson") and his company Picone & Robinson.

**A.  City of Thousand Oaks Website**

Plaintiffs discovered a violation of the preliminary injunction after accessing the "City of Thousand Oaks" website on January 11, 2013.  (Pls.' Second Mot. for an Order to Show Cause (Doc. #153) ["Pls.' Mot."], Decl. of Frederick J. Balboni ["Balboni Decl."] at ¶¶ 2, 6.)  Plaintiffs' manager, Frederick J. Balboni ("Balboni"), accessed the website, which referred to Defendants' music group three times.  (Id., Ex. 1 at 2; Pls.' Mot., Decl. of Eric M. Sommers ["Sommers Decl."], Ex. 1 at 3.)  On the website, a performance calendar with a link named "Details" contained an advertisement of Defendants' upcoming show on March 16, 2013, listing "The Platters" in large, bolded font with a sub-title stating, "Featuring the legendary Monroe Powell, backed by Cannibal and the Headhunters[.]" (Sommers Decl., Ex. 1 at 3.)  A poster advertisement on the website referred to Defendants' group as "The Platters Featuring The Legendary Monroe Powell."  (Id.)  At the bottom of the same poster, Defendants' group was referred to as "The Platters" along with illegible print.  (Id.)  Defendants' agent for the performance, Denise Diaco, booked the show.  (Id. at 8.)

On January 18, 2013, Plaintiffs' counsel wrote Defendants' counsel to explain that Plaintiffs discovered the City of Thousand Oaks website advertising that was in

violation of the preliminary injunction.  (Sommers Decl. ¶ 2.)  Plaintiffs' counsel requested that Defendants' counsel take action to ensure all advertising on the website was changed immediately.  (Sommers Decl., Ex. 1 at 2.)  Defendants' counsel responded on January 23, 2013, that he was "shocked" about the alleged violation, and had admonished Defendants to initiate remedial action.  (Id. at 8.)

Balboni contacted the venue and asked the venue to change the advertisement to comply with the Order.  (Balboni Decl. ¶ 6.)  According to Plaintiffs, the advertising was eventually modified as the result of Plaintiffs' efforts.  (Id.)  However, according to Defendants, it is unclear whether Plaintiffs' communications with the venue or action taken by Defendants led to the change.  (Sommers Decl., Ex. 1 at 8.)

**B. Fox Theater Website**

Plaintiffs discovered a second violation after accessing the "Fox Theater" website on January 18, 2013.  (Id. at 5.)  The website's "Event Details" page contained an advertisement of a March 17, 2013, performance entitled, "THE ORIGINAL CORNELL GUNTER'S COASTERS, THE ORIGINAL DRIFTERS, and THE PLATTERS."  (Id.)  In the first paragraph detailing the performance, the group was referred to as "THE PLATTERS featuring the legendary MONROE POWELL."  (Id.)  Denise Diaco, acting again as Defendants' agent, booked the performance.  (Id. at 8.)  Plaintiffs' counsel informed Defendants' counsel of the alleged violation on January 18, 2013.  (Id. at 2.)  In response, Defendants' counsel stated that he informed Defendants about the Fox Theater website and that parts of the website had been changed, but "there may still be one small part on the Fox Theater site that needs to be further altered (as of the morning, the front pate [sic] link still was mislabeled, although when the link is activated, the full page advertisement is correct)."  (Id. at 7-8.)  It is unclear whether the Fox Theater website has been altered to fully comply with the Order.

///

3

### C.  Robinson Websites

Plaintiffs discovered a third violation after accessing Robinson's "Picone & Robinson" website on May 29, 2013.  (Sommers Decl. ¶ 3.)  The site referred to Defendants' group in four different locations.  (Id., Ex. 2 at 3-6.)  Defendants' group was first referred to as, "The Platters feat. The Legendary Monroe Powell."  (Id. at 3.)  Defendant's group was next advertised in a large photograph on the website with "The PLATTERS featuring The Legendary Monroe Powell" prominently displayed.  (Id.)  Defendants' group was listed a third time as "THE PLATTERS Featuring The Legendary Monroe Powell" under the "Talent" section of the site.  (Id. at 6.)  Defendants' group was listed a fourth time as "The Platters . . ." under the "Talent Performance" section of the website.  (Id.)

After discovering the advertising on Robinson's website, Plaintiffs' counsel, Eric Sommers ("Sommers"), and Balboni had a telephone conversation with Robinson.  (Sommers Decl. ¶ 3.)  Sommers asserts that during the conversation,  Robinson communicated he was promoting Defendants because he was attempting to negotiate a recording deal.  (Id.)  According to Balboni, Robinson stated that Defendant Don Gloude ("Gloude"), Defendants' manager, provided the noncompliant advertising posted on the Robinson website.  (Balboni Decl. ¶ 9.)

On May 29, 2013, Plaintiffs' counsel sent a letter via email and United States mail to Defendants' counsel stating:

> It has recently come to our attention that your clients continue to violate the preliminary injunction issued last year.  We understand [Defendants] have recently hired a company called Picone & Robinson to promote them.  Last week, we spoke with one of the owners of that company, Maurey Robinson, who informed us that the promotional information they are using . . . were provided by your clients.  Those materials are in direct violation of the injunction.  Given that they were provided by your clients, there can be no question that the violation is intentional. . . .  Your clients' continued refusal to follow the injunction is troubling.

(Sommers Decl., Ex. 2 at 2.)  Several weeks after Plaintiffs brought the website to

4

Defendants' attention, Balboni discovered Robinson made some changes to the website. (Balboni Decl. ¶ 8.)

Plaintiffs discovered a fourth violation after accessing Robinson's second website on December 3, 2013.  (Id., Ex. 4.)  The website contained a picture of Defendants' group which was referred to three times as "The Platters Featuring Monroe Powell."  (Id. at 3-5.)  This website also contained a "Talent Booking" interactive calender.  (Id. at 9-11.)  Plaintiffs used the interactive calendar by clicking on the date, December 3, 2013, where the option to book several different performance groups appeared.  (Id. at 9-10.)  "The Platters feat. The Legendary Monroe Pow[ell]" was one of the groups listed as available for booking.  (Id. at 11.)

After discovering the fourth violation, Balboni went to the Picone & Robinson website on December 11, 2013, and learned that while some changes had been made, the homepage of the website continued to list Defendants in four different places: once as "THE PLATTERS Featuring the Legendary Monroe Powell"; twice as "The Platters . . ."; and once as "The Platters feat. The Legendary Monroe Powell Revue."  (Id., Ex. 5 at 2, 6, 9, 10.)  As of December 26, 2013, Gloude went to both Robinson websites and all promotional information about Defendants or "The Platters" had been removed.  (Defs.' Opp'n to Pls.' Second Mot. for an Order to Show Cause (Doc. #157) ["Defs.' Opp'n"], Decl. of Don Gloude ["Gloude Decl."] ¶¶ 7, 9.)

Plaintiffs contend Defendants hired Robinson, a music producer, to help promote Defendants' musical group.  (Balboni Decl. ¶ 8.)  In their opposition brief, Defendants argue, without supporting evidence, that they never hired Robinson to promote Defendants, and at the time of the website postings, Robinson had no relationship with Defendants. (Defs.' Opp'n at 7.)  Defendants argue in their brief they were merely negotiating with Robinson to produce a new album.  (Id. at 5.)  Gloude testified at his July 19, 2013, deposition that Robinson had no relationship with Defendants.  (Sommers Decl., Ex. 4 at

5.)[1]  Defendants admit they gave Robinson a copy of the Order, but they assert it was only for the purpose of informing him about the parameters of any future agreement.  (Id. at 6; Defs.' Opp'n at 5; Balboni Decl. ¶ 9.)  Gloude provided Robinson with the promotional materials placed on the website.  (Sommers Decl., Ex. 4 at 6.)  The materials were labeled "The Platters feat. The Legendary Monroe Powell" without the terms "Revue" or "Tribute." (Id.)  Gloude testified that did not give Robinson permission to post the materials to the site, had no knowledge of Robinson's intent to post the materials, and was unaware that a site existed.  (Id.)

On January 4, 2014, Plaintiffs obtained a copy of a "Personal Management Agreement" between Robinson's company and Monroe Powell's Platters, LLC.  (Pls.' Reply, Decl. of Frederick J. Balboni ["Pls.' Reply, Balboni Decl."] (Doc. #159), Ex. 1.) The agreement named Picone & Robinson as Monroe Powell's Platters, LLC's manager to begin on May 17, 2013, through May 17, 2016.  (Id.)  Robinson, Powell, and Gloude signed the agreement in the presence of a witness on May 17, 2013, and it was notarized on May 28, 2013.  (Id. at 5.)  At the motion hearing on February 10, 2014, Defendants' counsel admitted Picone & Robinson entered into a contract with "Defendants" for "promotional services . . . [and for] guidance and advice regarding all aspects of development of the artists . . . ."  (Tr. (Doc. #164) at 10.)  Defendants' counsel referred to contract terms regarding "mutual agreement" and "approval between the artist and manager" with respect to promotional activities, which mirror provisions in the Personal Management Agreement

///

///

---

[1]  "Q. And does Bobby [Robinson] have a relationship with the company – with your company [Monroe Powell's Platter, LLC]?  A. With our company?  Q. Yes.  A. He doesn't have a relationship with our company, no.  Q. Does he do anything for you guys?  A. Not yet. . . .  Q. Have you been in negotiations with him to represent you?  A. We did that.  Q. And what was the result?  A. Nothing yet."

attached to Plaintiffs' Reply.[2]  (Id.; Pls.' Reply, Balboni Decl., Ex. 1 at 2.)  At the hearing,

Defendants did not dispute the Personal Management Agreement presented by Plaintiffs is

an authentic enforceable contract between Monroe Powell's Platters, LLC and Picone &

Robinson.  Although served with Plaintiffs' Second Motion for an Order to Show Cause

why Robinson and Picone & Robinson should not be held in contempt and sanctioned,

Robinson and Picone & Robinson did not respond and did not appear at the February 10

hearing.  (Aff. of Service (Doc. #160).)

### D.  Australia Websites

Plaintiffs discovered a fifth violation after accessing "The Regal Theatre"

website on October 22, 2013.  (Balboni Decl., Ex. 6 at 2.)  Defendants' group was referred

to three times on the Australian website: first as "The Platters LIVE" to perform on "22 &

23 Nov"; second as "THE PLATTERS LIVE"; and third as "The Platters LIVE at The

Regal Theatre."  (Id. at 2-4.)

Plaintiffs discovered a sixth violation after accessing the "Kedron-Wavell

Services Club" website, a second Australian website, on October 24, 2013.  (Id.)  Under the

"Live Concerts" section of the site, Defendants' group was advertised as performing on

"Saturday, 16th November, 8:30pm" as "The Platters."  (Id.)  Defendants admit they toured

in Australia between October 16, 2013, and October 18, 2013, but claim in their opposition,

without supporting evidence, that both websites were "incorrect" because Defendants did

not actually perform during the dates advertised on the websites.  (Defs.' Opp'n at 9.)

---

[2]  The Court generally does not consider arguments or evidence raised for the first time in a reply brief because the opposing party does not have an opportunity to respond.  Carstarphen v. Milsner, 594 F. Supp. 2d 1201, 1204 n.1 (D. Nev. 2009).  Here, however, Plaintiffs assert they did not obtain the Personal Management Agreement until shortly before they filed their Reply brief.  (Pls.' Reply, Balboni Decl. ¶ 3.)  Additionally,  Defendants had an opportunity to respond to the new evidence at the motion hearing, at which Defendants acknowledged a contract existed and did not dispute the authenticity of the Personal Management Agreement Plaintiffs presented.  The Court therefore will consider the Personal Management Agreement.

Defendants claim, again without supporting evidence, they put promoters for their October tour on notice of the preliminary injunction. (Id.) Defendants argue promoters and venues in Australia unilaterally concluded they were not subject to the preliminary injunction because they were outside of the Court's jurisdiction, and therefore they did not comply. (Id.)

### E. ARB Productions Website

Plaintiffs discovered a seventh violation after accessing the "ARB Productions" website on December 11, 2013, two days before Plaintiffs filed the present Motion. (Balboni Decl., Ex. 2.) The site referred to Defendants' group in three different locations. (Id.) Defendants' group was first referred to as, "The Platters," under the "Vocal Groups" section of the website. (Id. at 2.) Defendants' group was advertised next as "The Platters," along with a biography of the group. (Id. at 3.) The group was listed a third time in a heading to a photograph of Defendants as "The Platters." (Id.) ARB Productions is a United States and Canadian agent who advertises on behalf of Defendants. (Balboni Decl. ¶ 7.) Defendants do not deny ARB Productions is their agent.

## III. DISCUSSION

Plaintiffs argue Defendants should be held in civil contempt and sanctioned due to repeated violations of the preliminary injunction Order where Defendants promote themselves as "The Platters Featuring Monroe Powell" in the United States or simply as "The Platters" when they appear outside the United States. Plaintiffs argue Defendants fail to remedy violations until they have been discovered by Plaintiffs, and a pattern has developed where Plaintiffs notify Defendants of violations in connection with one venue, but subsequently discover new violations affiliated with another venue. Plaintiffs argue Defendants continue to violate the Order by providing non-compliant advertising to agents and promoters, failing to monitor advertising of upcoming performances, and failing to ensure agents and promoters comply with the injunction. Additionally, Plaintiffs contend

that while most violations have been fixed, there are current violations.  Plaintiffs further argue nonparties Robinson and Picone & Robinson also should be held in civil contempt and sanctioned because Robinson is aware of the Order, but nevertheless acted in concert with Defendants to promote Defendants' group in a manner that violated the Order.

Defendants concede violations of the preliminary injunction occurred, but argue they should not be held in civil contempt and sanctioned because they have made all reasonable efforts to comply with the Order.  Defendants argue they provide "all potential leads" with a copy of the Order and advise them on the subject of the Order.  (Defs.' Opp'n at 5.)  On occasions when Defendants choose to hire an agent, Defendants contend it is the agent's role to monitor advertising associated with performances.  Defendants claim their contracts with agents enumerate that promotional materials of Defendants' group need to comply with the Order.  Defendants further argue it is the agent's job to communicate to promoters the requirements set forth in the preliminary injunction.  Defendants argue any violations of the Order by agents or promoters after taking these steps is out of their control. When Defendants directly negotiate a show without hiring an agent, Defendants assert they provide a rider to the venue that describes how the show must be advertised in light of the preliminary injunction, as well as a copy of the injunction.

Plaintiffs reply that Defendants are responsible for their agents' acts, and cannot delegate their responsibility to comply with the Order.  Plaintiffs argue that violations are remedied once Defendants are alerted to the problem, which demonstrates Defendants have control, and therefore, could ensure compliance with the Order at the outset by demanding Defendants approve advertising prior to dissemination.  Plaintiffs also argue the discovery of a management agreement between Defendants and Robinson debunks Defendants' argument that Robinson acted independently of Defendants.

///

///

1   **A.  Civil Contempt**

2   The Court has inherent power to enforce compliance with its lawful orders

3 through civil contempt.  <u>Spallone v. United States</u>, 493 U.S. 265, 276 (1990).  Civil

4 contempt "consists of a party's disobedience to a specific and definite court order by failure

5 to take all reasonable steps within the party's power to comply."  <u>In re Dual-Deck Video</u>

6 <u>Cassette Recorder Antitrust Litig. ("In re Dual-Deck")</u>, 10 F.3d 693, 695 (9th Cir. 1993).

7 "The moving party has the burden of showing by clear and convincing evidence that the

8 contemnors violated a specific and definite order of the court."  <u>Fed. Trade Comm'n v.</u>

9 <u>Enforma Natural Prods., Inc.</u>, 362 F.3d 1204, 1211 (9th Cir. 2004) (quotation omitted).

10 "The burden then shifts to the contemnors to demonstrate why they were unable to comply."

11 <u>Id.</u> at 1204.

12   "Substantial compliance with the court order is a defense to civil contempt, and is

13 not vitiated by a few technical violations where every reasonable effort has been made to

14 comply."  <u>In re Dual-Deck</u>, 10 F.3d at 695 (quotation omitted).  A contemnor fails to take

15 all reasonable steps where there is "little conscientious effort on the part of the

16 [contemnors] to comply . . . ."  <u>Stone v. City & Cnty. of San Francisco</u>, 968 F.2d 850, 857

17 (9th Cir. 1992) (quotation omitted).  A court also may find a defendant should conduct a

18 "reasonable inspection" to prevent violations of the order.  <u>Gen. Signal Corp. v. Donallco,</u>

19 <u>Inc.</u>, 787 F.2d 1376, 1379 (9th Cir. 1986).  A defendant who takes subsequent steps to

20 correct a violation may be found to have made "every reasonable effort" to comply.  <u>Vertex</u>

21 <u>Distrib., Inc. v. Falcon Foam Plastics, Inc.</u>, 689 F.2d 885, 892 (9th Cir. 1982).

22   Civil contempt "'need not be willful,' and there is no good faith exception to the

23 requirement of obedience to a court order."  <u>In re Dual-Deck</u>, 10 F.3d at 695 (quoting <u>In re</u>

24 <u>Crystal Palace Gambling Hall, Inc.</u>, 817 F.2d 1361, 1365 (9th Cir. 1987)).  "[H]owever, a

25 person should not be held in contempt if his action appears to be based on a good faith and

26 reasonable interpretation of the court's order."  <u>Reno Air Racing Ass'n., Inc. v. McCord</u>,

452 F.3d 1126, 1130 (9th Cir. 2006) (quotation omitted).  The Court has "wide latitude" in determining whether there has been contemptuous conduct in violation of its order.  Stone, 968 F.2d at 856 (quotation omitted).

Nonparties may be held in civil contempt for violation of a preliminary injunction order.  McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 344 (9th Cir. 1966).  Preliminary injunction orders bind: (1) the parties; (2) the parties' officers, agents, servants, employees, and attorneys; and (3) any other persons who are in "active concert or participation" with the parties or the parties' agents, so long as they received actual notice of the order "by personal service or otherwise." Fed. R. Civ. P. 65(d)(2)(a)-(c).  For a nonparty to be held in contempt, they must legally identify with the defendant or must have aided or abetted the defendant in the violation.  Peterson v. Highland Music, Inc., 140 F.3d 1313, 1324 (9th Cir. 1998) (quotation omitted).  The procedure for enforcing an order against a nonparty is the same as for a party.  Fed. R. Civ. P. 71.

*1. Violations of Specific and Definite Order*

This Court's February 1, 2012 Order explained in detail that Defendants and their agents may use the mark THE PLATTERS only if: (1) the word "Tribute" or "Revue" was included and was at least half the font size of THE PLATTERS; or (2) Reed gave written permission to Defendants to use the mark THE PLATTERS in any other manner.  (Order at 13.)  The preliminary injunction specified that the words "Tribute" or "Revue" must attach to all "advertisements, promotional, marketing, or other materials" when using THE PLATTERS mark.  (Id.)  Therefore, the preliminary injunction was specific and definite.

Balboni discovered Defendants' first violation of the preliminary injunction on January 11, 2013.  Plaintiffs have shown by clear and convincing evidence Defendants' violation of the Order in a printed copy of the City of Thousand Oaks website.  On the site, Defendants' group was referred to as "THE PLATTERS Featuring the Legendary Monroe Powell" and "THE PLATTERS," without the words "Revue" or "Tribute."  Defendants

1  concede their agent, Denise Diaco, booked the performance.

2      Plaintiffs have shown by clear and convincing evidence Defendants' second

3  violation of the Order discovered on January 18, 2013, on The Fox Theater website.  The

4  site contained an advertisement of a scheduled performance by Defendants to take place on

5  March 17, 2013.  Defendants' group was referred to as "THE PLATTERS" and "THE

6  PLATTERS featuring the Legendary Monroe Powell," again without the words "Revue" or

7  "Tribute."  Defendants admit their agent, Denise Diaco, also booked this performance.

8      Plaintiffs have shown by clear and convincing evidence the third and fourth

9  violations by Defendants and nonparties Robinson and Picone & Robinson.  The third

10  violation was discovered on the "Picone & Robinson" website on May 29, 2013.

11  Defendants' group was advertised on the website in four different locations using the mark

12  "The PLATTERS" without using the words "Revue" or "Tribute."  The fourth violation

13  was discovered on December 3, 2013, on a second Robinson website.  Defendants' group

14  was referred to in four different locations on the site as "The Platters Featuring Monroe

15  Powell."  The words "Revue" or "Tribute" were not used.  The third and fourth violations

16  on Robinson's websites occurred after Defendants entered into the "Personal Management

17  Agreement" with Robinson on May 17, 2013.  The agreement named Picone & Robinson as

18  Defendants' manager through May 17, 2016.

19      Defendants concede they provided Robinson with promotional materials labeled

20  "The Platters feat. The Legendary Monroe Powell" in violation of the injunction.

21  Additionally, Defendants concede they gave Robinson a copy of the Order.  Plaintiffs thus

22  have shown by clear and convincing evidence that Robinson received actual notice of the

23  preliminary injunction and was Monroe Powell's Platters, LLC's manager at the time of the

24  violations.  Therefore, Robinson and Picone & Robinson, as nonparties, are also responsible

25  for the third and fourth violations of the preliminary injunction.

26  ///

Plaintiffs have shown by clear and convincing evidence that advertising of Defendants' performances in Australia after the preliminary injunction went into effect on February 1, 2012, also violated the Order.  Defendants concede that advertising for their tour between October 16, 2013, and October 28, 2013, did not comply with the preliminary injunction.

Last, Plaintiffs provide clear and convincing evidence of a seventh violation discovered on December 11, 2013, on the ARB Productions website.  Plaintiffs present evidence that ARB Productions is a United States and Canadian booking agent for Defendants and Defendants do not dispute ARB Productions is their agent.  Defendants' group was referred to as "THE PLATTERS" in three different locations on the website without the words "Revue" or "Tribute."

Plaintiffs have presented clear and convincing evidence of each of the seven violations, and Defendants do not dispute any of the seven violations occurred.  The Court therefore finds by clear and convincing evidence that Defendants and nonparties Robinson and Picone & Robinson violated this Court's specific and definite February 1, 2012 Order.

### 2. Failure to Take All Reasonable Steps

Defendants and Robinson have not met their burden of demonstrating they made every reasonable effort to comply with the preliminary injunction.  Although Defendants argue they advise agents, venues, and promoters about the Order, this has proven inadequate to ensure compliance.  Plaintiffs discovered seven violations of the preliminary injunction on several unrelated websites owned by multiple agents, venues, and promoters over an eleven month period.  Based on the string of violations, a history of noncompliance with the preliminary injunction beyond a few technical violations has been established.

Defendants provided non-compliant advertising to agents, which shows a lack of a conscientious effort to comply with the injunction.  Defendants and their agents failed to monitor advertising of upcoming performances knowing that promoters were not complying

with the Order.  Defendants are responsible for their agents' acts, and are not absolved of their responsibility to comply with the preliminary injunction by delegating the monitoring of advertising to their agents.  Defendants do not check the Internet to monitor how their group is advertised.  (Sommers Decl. Ex 4 at 7.)  Gloude stated at his deposition on July 19, 2013, that when Defendants hire an agent for a performance, he makes no effort to monitor advertising of upcoming performances.  (Id. at 5.)  Further, Gloude stated that on occasions when Defendants directly negotiate a show without using an agent, the only effort Defendants make to ensure the venue and promoters are complying with the Order is to ask, if they "[took] care of everything."  (Id.)  Gloude stated that, "nine times out of ten," promoters and venues reply yes, but "when [he] get[s] there, [he] will see it's totally different."  (Id.)  This general question by Defendants has proven insufficient to ensure compliance with the Order, and Defendants' manager was aware that his inquiries were not ensuring compliance.  Although it would be unreasonable for Defendants to arbitrarily search the Internet for any sign of advertisements in violation of the Order, it is reasonable for Defendants and their agents to check websites of promoters' venues when Defendants have booked upcoming performances to ensure the advertising complies with the Order. Additionally, it is reasonable for Defendants to check websites of agents and promoters if Defendants have provided them with promotional materials to ensure the agents and promoters are obeying the injunction.

Defendants' argument that they have made all reasonable efforts to comply with the Order in Australia by providing venues and promoters with a copy of the Order is insufficient.  Defendants admit the words "Revue" or "Tribute" are never attached to THE PLATTERS name when they perform in Australia, yet Defendants perform regardless.  (Id. at 7.)  Whether Defendants are performing in the United States or abroad, they are still bound to comply with the injunction.  Therefore, Defendants fail to prove they took all reasonable steps to comply with the preliminary injunction, and the Court finds Defendants

1   in civil contempt.

2          Robinson and Picone & Robinson also failed to take all reasonable steps to

3   comply with the preliminary injunction Order.  Defendants gave Robinson and Picone &

4   Robinson a copy of the Order, and therefore Robinson was aware of the parameters of how

5   to identify Defendants' group in promotions and advertisements.  Robinson and Picone &

6   Robinson did not provide evidence showing they substantially complied with the Order.

7   The Court therefore finds Robinson and Picone & Robinson in civil contempt.

8          **B.  Civil Contempt Sanctions**

9          Civil contempt proceedings may be employed for two purposes: (1) "to coerce

10   the contemnor into compliance with the court's order," and (2) "to compensate the

11   complainant for losses sustained." Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517

12   (9th Cir. 1992).  Civil contempt sanctions designed to coerce contemnors into compliance

13   are conditional "by their very nature" and "operate if and when the person found in

14   contempt violates the order in the future." Id. (quotation omitted).  "If a sanction operates

15   whether or not a party remains in violation of the court order, it does not coerce

16   compliance." Id. at 517.

17          The Court has discretion to impose coercive civil contempt sanctions in the form

18   of a "per diem fine imposed for each day a contemnor fails to comply with an affirmative

19   court order." United States v. Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (quotation omitted).

20   In determining the amount and duration of a coercive sanction, the Court must "consider the

21   character and magnitude of the harm threatened by continued contumacy, and the probable

22   effectiveness of any suggested sanction in bringing about the result desired." Whittaker

23   Corp., 953 F.2d at 517 (quotation omitted).

24          Additionally, the Court may award attorney's fees and expenses to the aggrieved

25   party as a remedial measure. Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985).

26   Willful disobedience by the contemnor is not a prerequisite to a discretionary award of fees

and expenses.  Id. at 705.

As to coercing compliance with the preliminary injunction Order, the first, second, third, and fourth violations have been corrected.  Plaintiffs have not provided evidence that the fifth and sixth violations on the Australian websites still were in violation of the Order when Plaintiffs filed the present Motion.  Consequently, there is no need for a coercive civil contempt sanction to ensure compliance as to these violations.  However, at the time of filing the present Motion, Plaintiffs presented evidence that violations continued to exist on the ARB Productions website.

The Court concludes, based on the character and magnitude of harm to Plaintiffs and the probable effectiveness of a sanction, that a coercive sanction is appropriate with respect to the ARB Productions website.  Plaintiffs have proven they suffer irreparable injury when Defendants infringe on their rights to the mark THE PLATTERS.  (Order (Doc. #165) at 14, 18-19.)  Defendants' and others' use of THE PLATTERS mark has created marketplace confusion, and has impacted Plaintiffs' ability to book their own performances.  (Id. at 14.)  Continued contumacy will damage Plaintiffs' reputation and dilute Plaintiffs' goodwill among consumers.  Additionally, Defendants have failed on several occasions to take all reasonable steps to obey the preliminary injunction, and are currently in violation of the injunction.  Based on Defendants' record of noncompliance, Defendants are unlikely to acquiesce absent coercive measures.  Consequently, Defendants will have thirty days from the date of this Order to ensure the website of their agent, ARB Productions, complies with this Court's permanent injunction Order.  If the violation continues thereafter, the Court finds it appropriate to order a conditional civil sanction of $100 per day until Defendants ensure the ARB Productions website is fixed.

In the future, Defendants shall take additional steps to comply with the permanent injunction.  When Defendants book a performance, they must proactively monitor advertising to ensure it complies with the permanent injunction.  Also, Defendants shall not

provide materials in violation of the permanent injunction to agents, promoters, or venues regardless of Defendants' intent for doing so.

Regarding a sanction to compensate Plaintiffs for the violations, before filing their Motion, Plaintiffs wrote two letters informing Defendants of several violations of the Order in an attempt to ensure voluntarily compliance. Despite Plaintiffs' attempts to secure Defendants' compliance with the Order, violations continued, and thereby left Plaintiffs with no option but to file the present Motion. The Court therefore grants leave for Plaintiffs to file a motion for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d), Local Rule 54-1, and Local Rule 54-16 within fourteen days of the date of this Order.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Herb Reed Enterprises, Inc. and Herb Reed Enterprises, LLC's Second Motion for an Order to Show Cause Why Defendants, Maurey Robinson and Picone & Robinson Should Not Be Held in Contempt and Sanctioned (Doc. #153) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants Monroe Powell's Platters, LLC; Monroe Powell; and Don Gloude, and nonparties Maurey Robinson and Picone & Robinson violated this Court's February 1, 2012 preliminary injunction Order and are held in civil contempt.

IT IS FURTHER ORDERED that Defendants Monroe Powell's Platters, LLC; Monroe Powell; and Don Gloude shall ensure that the ARB Productions website is compliant with this Court's permanent injunction Order[3] within thirty days from the date of this Order, or the Court will impose a fine of $100 per day on Defendants Monroe Powell's Platters, LLC; Monroe Powell; and Don Gloude until the ARB Productions website is

---

[3] The Court finds a violation of the preliminary injunction, but because the permanent injunction Order is now entered, Defendants must comply with the permanent injunction.

1    compliant.

2         IT IS FURTHER ORDERED that Plaintiffs may file a motion for attorney's fees

3    and costs associated with this Motion within fourteen days of the date of this Order.

4

5    DATED:  August 8, 2014

6                                              _____

7                                              PHILIP M. PRO
                                               United States District Court Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26